1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SHANNON RAY HALL,

11              Petitioner,                    No. CIV S-08-824 FCD CHS P

12        vs.

13   CLAUDE FINN,

14              Respondent.        FINDINGS AND RECOMMENDATIONS

15   _____/

16                              I.  INTRODUCTION

17              Petitioner Hall is a state prisoner proceeding pro se with a petition for writ of

18   habeas corpus brought pursuant to 28 U.S.C. §2254.  Petitioner is currently serving an

19   indeterminate sentence of 16 years to life following his 1989 conviction in Los Angeles County

20   for second degree murder with use of a deadly weapon.  This petition challenges the execution of

21   petitioner's sentence, and specifically, the November 16, 2006 decision of the state parole

22   authority that he was not suitable to be released on parole.

23                              II.  BACKGROUND

24              According to a summary of facts read into the record at petitioner's parole

25   suitability hearing, his offense arose out of a verbal altercation with his friend.  On March 9,

26   1988, from approximately 8:15 to 9:30 p.m., petitioner, age 17, and the victim, Dennis Jobe,

1   were in the parking lot of a Target retail store.  A witness saw the two young men fighting for

2   about 20 minutes, lost sight of them, and then saw them fighting for another five to ten minutes.

3   They were yelling and shoving each other.  According to the witness, Jobe appeared to be

4   defending himself.  When the witness left, both young men were inside a gold van parked in the

5   lot.  At about 9:45 to 9:50 p.m., Target's manager patrolled the parking lot for security purposes.

6   He noticed a gold van in the lot but no one near it.  After making a circle of the entire area, he

7   noticed the van was gone.  He also discovered Jobe's body in the road near an exit from the

8   parking lot.  The autopsy revealed the cause of death to be multiple stab wounds to the chest,

9   ribcage, and back from a four to six-inch knife.  Officers interviewed petitioner at his home later

10  that night and subsequently transported him to headquarters where he was arrested.

11          According to petitioner's version of the offense, he got off work at 6:00 p.m. and

12  had been drinking since that time.  Petitioner had been severely depressed for about two weeks

13  about problems with his girlfriend and his biological father.  Petitioner and Jobe were in the

14  Target parking lot eating food purchased from Jack in the Box across the street.  While they were

15  eating, Jobe wiped food on the dash of the van and an argument ensued.  Petitioner told Jobe to

16  get out, but Jobe responded, "Hell no, you are going to take me home."  Petitioner went across

17  the street for more beer.  Jobe walked over to a nearby phone booth.  Petitioner went back to his

18  van and turned the key.  According to petitioner Jobe came flying through the window opening,

19  pulled petitioner out, removed his shirt, and challenged petitioner to fight.  It was then that

20  petitioner grabbed his knife, which was under the driver's seat.  After that, the events are a blur

21  to petitioner.  He felt as if he were not in control of his body.  Petitioner does not remember how

22  many times he stabbed Jobe.  (*See* Transcript of Subsequent Parole Consideration Hearing, State

23  of California, Board of Parole Hearings, November 16, 2006 ("Transcript"), at 12-13.)

24          Petitioner was convicted of second degree murder with use of a deadly weapon

25  and sentenced to a term of 16 years to life.  He was received in state prison on December 13,

26  1989.  On November 16, 2006, a panel of the Board of Parole hearings ("Board") conducted a

hearing to determine whether petitioner was suitable for parole.   After considering various positive and negative suitability factors, the panel concluded that petitioner would pose an unreasonable risk of danger to society if released, and thus that he was not suitable for parole.

Petitioner sought habeas corpus relief in the California state courts.  On October 29, 2007, the Los Angeles County Superior Court issued a decision concluding that the Board's decision was supported by some evidence in the record.  The California Court of Appeal and the California Supreme Court likewise denied petitioner's claims for relief on state habeas corpus.

### III.  CLAIMS PRESENTED

The petition sets forth three grounds for relief.  In ground one, petitioner claims that the Board's decision to deny parole was unsupported by "real" evidence in the record that he posed an unreasonable risk of danger or threat to public safety.  Petitioner contends specifically that the Board made findings that were not supported by the record and improperly relied on unchanging factors such as the commitment offense and his conduct prior to his incarceration.  In ground two, petitioner claims that the Board cited various relevant and reliable information such as mental health reports, counselor reports, conduct in prison, and rehabilitation, but failed to *actually consider* this positive evidence in relation to his parole suitability.  Finally, in ground three, petitioner contends that the "some evidence" standard of review infringes upon his liberty interest and that a preponderance of the evidence standard, or a "substantive evidence" standard, should apply instead.

For purposes of this opinion, each of petitioner's three grounds for relief will be addressed in a single discussion on federal due process of law in the state parole context.

### IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

1   This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

2   the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521

3   U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under

4   AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in

5   state court proceedings unless the state court's adjudication of the claim:

6           (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as
7           determined by the Supreme Court of the United States; or

8           (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
9           State court proceeding.

10   28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

11   *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

12                   V.  FEDERAL DUE PROCESS IN THE STATE PAROLE CONTEXT

13           The Due Process Clause of the Fourteenth Amendment to the United States

14   Constitution prohibits state action that deprives a person of life, liberty, or property without due

15   process of law.  In general, a person alleging a due process violation must first demonstrate that

16   he or she was deprived of a protected liberty or property interest, and then show that the

17   procedures attendant upon the deprivation were not constitutionally sufficient.  *Kentucky Dep't.*

18   *of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895,

19   900 (9th Cir. 2002).

20           A protected liberty interest may arise from either the Due Process Clause itself or

21   from state laws.  *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  The United States

22   Constitution does not, in and of itself, create for prisoners a protected liberty interest in receipt of

23   a parole date.  *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).  If a state's statutory parole scheme

24   uses mandatory language, however, it creates a presumption that parole will be granted, thereby

25   giving rise to a constitutional liberty interest.  *McQuillion*, 306 F.3d at 901 (citing *Greenholtz v.*

26   *Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979)).  California's statutory scheme for

                                                      4

1  determining parole for life-sentenced prisoners provides, generally, that parole *shall* be granted

2  "unless consideration of the public safety requires a more lengthy period of incarceration."  Cal.

3  Penal Code §3041 (emphasis added).  This statute gives California state prisoners whose

4  sentences carry the possibility of parole a clearly established, constitutionally protected liberty

5  interest in receipt of a parole release date.  *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007)

6  (*citing Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006)); *Biggs v. Terhune*,

7  334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*, 306 F.3d at 903; *Allen*, 482 U.S. at 377-78

8  (*quoting Greenholtz*, 442 U.S. at 12)).

9           The full panoply of rights afforded a defendant in a criminal proceeding is not

10  constitutionally mandated in the context of a parole proceeding.  *See Pedro v. Or. Parole Bd.*,

11  825 F.2d 1396, 1398-99 (9th Cir. 1987).  The Supreme Court has held that a parole board's

12  procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a

13  decision informing him of the reasons he did not qualify for parole.  *Greenholtz*, 442 U.S. at 16.

14           Additionally, as a matter of California state law, denial of parole to state inmates

15  must be supported by at least "some evidence" demonstrating future dangerousness.  *Hayward v.*

16  *Marshall*, 603 F.3d 546, 562-63 (9th Cir. 2010) (en banc) (citing *In re Rosenkrantz*, 29 Cal.4th

17  616 (2002), *In re Lawrence*, 44 Cal.4th 1181 (2008), and *In re Shaputis*, 44 Cal.4th 1241

18  (2008)).  California's "some evidence" requirement is a component of the liberty interest created

19  by the state's parole system."  *Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010).  The federal

20  Due Process Clause requires that California comply with its own "some evidence" requirement.

21  *Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam).  Accordingly, the United

22  States Court of Appeals for the Ninth Circuit has held that a reviewing court such as this one

23  must "decide whether the California judicial decision approving the... decision rejecting parole

24  was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based

25  on an unreasonable determination of the facts in light of the evidence.'"  *Hayward*, 603 F.3d at

26  562-63 (citing 28 U.S.C. §2254(d)).

Petitioner's contrary assertion that a preponderance of the evidence standard applies instead is without merit.  No federal authority cited by petitioner supports this contention, or his similar contention that the standard should be at least "substantive evidence," defined as enough evidence to convince a reasonable person.  Pursuant to existing Ninth Circuit authority, the some evidence standard of review is the proper standard to be applied.  *See, e.g., Hayward*, 603 F.3d at 562-63; *Pearson*, 606 F.3d at 609.

The analysis whether some evidence supports a parole decision in California is framed by the state's statutes and regulations governing parole suitability determinations for its prisoners.  *See Irons*, 505 F.3d at 851.  Title 15, Section 2402 of the California Code of Regulations sets forth various factors to be considered by the Board in its parole suitability findings for murderers.  The Board is directed to consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

15 Cal. Code Regs. §2402(b).  The regulation also sets forth specific circumstances which tend to show unsuitability or suitability for parole:

> (c) Circumstances Tending to Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:
>
> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner....
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious

6

assaultive behavior at an early age.

(3) Unstable social history.  The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(d) Circumstances Tending to Show Suitability. The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate suitability include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed

7

1      marketable skills that can be put to use upon release.

2      (9) Institutional Behavior. Institutional activities indicate an
       enhanced ability to function within the law upon release.

3

4  15 Cal. Code Regs. § 2402(c)-(d).  The foregoing factors are general guidelines; the Board must

5  consider all relevant information.  *In re Aguilar*, 168 Cal.App.4th 1479, 1487 (2nd Dist. 2008);

6  *see also* 15 Cal. Code Regs. §2402(b) ("The fundamental consideration is public safety.").

7          Since the overriding concern is public safety, the proper focus is on the inmate's

8  *current* dangerousness.  *In re Lawrence*, 44 Cal. 4th at 1205.  Thus, the applicable standard of

9  review is not whether some evidence supports the reasons cited for denying parole, but whether

10  some evidence indicates that the inmate's release would unreasonably endanger public safety.  *In*

11  *re Shaputis*, 44 Cal.4th at 1254.  In other words, there must be a rational nexus between the facts

12  relied upon and the ultimate conclusion that the prisoner continues to be a threat to public safety.

13  *In re Lawrence*, 44 Cal. 4th at 1227.

14          In this case, the panel of the Board presiding over petitioner's November 16, 2006

15  parole suitability hearing explained their decision to deny him parole as follows:

16      The Panel reviewed all information received from the public and
        relied on the following circumstances in concluding that the
17      prisoner is not suitable for parole and would pose an unreasonable
        risk of danger or a threat to public safety if release[d] from prison.
18      We have come to these conclusions first by the commitment
        offense.  It was carried out in an especially cruel, very brutal, very
19      callous manner.  Again, the stabbing of a friend and that you then
        left him there to die without making any attempts to call for
20      assistance to get him – to possibly get him some help.  The offense
        again carried out in a very dispassionate manner.  The offense
21      carried out in a manner which demonstrates an exceptionally
        callous disregard for human life.  The motive for the crime is
22      trivial in relation to this offense.  And again, I don't know whether
        again alcohol – causative factors of alcohol or anger or the issues
23      about that he put his hands on your dashboard and because he had
        food.  Again, those are things that are not very clear in that sense.
24      These conclusions are drawn from the Statement of Facts wherein
        the prisoner and the victim were acquaintances and they were in a
25      parking lot eating and an argument erupted, a fight ensued, and the
        inmate took a knife from under the front seat of his van, and
26      stabbed the victim, Dennis Jobe, to death five times in the chest

8

and rib area causing his death.  The prisoner does have a pattern of criminal conduct, has failed previous grants of probation, has failed to profit from society's previous attempts to correct his criminality and attempts do include juvenile probation.  As far as looking into his unstable history and prior criminality, again it does include issues of substance abuse at an early age, a long history of drug and alcohol abuse, using marijuana, alcohol, at the age of [ ] ...14 to 16 years old his admission of using cocaine on a daily basis, acid four to six times per week.  At the age of 16, he sustained an overdose on alcohol and sleeping pills, was placed in drug rehabilitation programs that were unsuccessful, a juvenile criminal record of minor in possession of alcohol, trespassing, and vandalism, and also again not completing high school and dropping out I believe in the eleventh grade.  The prisoner has not sufficiently participated in beneficial self-help, and we urge him to continue in this area, again, to help understand the causative factors and his responsibility.  Misconduct while incarcerated does include four 128 counseling chronos, the most recent in 2002 for out of bounds. In regards to serious 115 disciplinary reports, a total of five, the most recent in 1995 for mutual combat.  And I do want to note that a lot of the 115s reflect violence and drugs that were involved.  The psychological report dated October 5th of 2006, authored by Dr. Reckert, again, is supportive of release.  Under assessment of dangerousness within a controlled setting of an institution, it is seen as below average in comparison with other inmates. Assessment of dangerousness if released to the community is seen as below average in comparison with other inmates.  And again, in regards to your parole plans, we find – the Panel finds that you do have realistic parole plans, residential.  We want to indicate that they are satisfactory.  Some concerns when you're moving in with an elderly individual, your grandmother.  We don't know what things can – As far as again, how solid that would be.  But again, you do have a place to go to.  You do have acceptable employment plans, and you do have marketable skills in that area that the Panel has taken into consideration.  So with that, in regards to the PC 3042 responses, again indicating opposition to a finding of parole suitability and this is specifically by the Los Angeles County Deputy District Attorney's – District Attorney's Office.  I do want to mention that the Deputy District Attorney is obviously here present and has provided a statement regarding opposition to a finding of parole suitability.  The Panel makes the following findings and again that there's a need for additional in order to sustain progress in self-help [sic], again in order to discuss, to face, and understand, and cope with the stress in a nondestructive manner.  Again, until progress is made, the prisoner continues to be unpredictable and a threat to others.  The prisoner's gains are recent.  Again, and this is in the area of your remorse and your prison behavior.  Again, you must demonstrate an ability to maintain goals – gains, excuse me, over an extended period of time.  Nevertheless, we should commend you for your vocational upgrades that you've done, your Mechanical Drawing, your

1               Woodworking, your Drafting, as well as obtaining a GED in 1989.

              However, these positive aspects of your behavior do not outweigh

2               the factors of unsuitability.

3 (Transcript at 87-90.)

4         Thus, in finding petitioner not suitable for parole, the Board relied, at least in part,

5 on the nature and gravity of his commitment offense.  The circumstances of petitioner's

6 commitment offense indeed appear to fit the state regulatory description for one that is especially

7 aggravated.  Certainly petitioner's explained motive, anger for the victim having wiped food on

8 the dashboard of the van, was unusually trivial, even under petitioner's reported condition of

9 stress and depression at the time.  *See* 15 Cal. Code Regs. §2402 (c)(1)(E); *In re Scott*, 119

10 Cal.App.4th 871, 893 (1st Dist. 2004) (*Scott I*) (explaining that even though all motives for

11 murder could reasonably be deemed trivial, the relevance of this suitability factor is that one

12 whose motive is unusually trivial or cannot be explained may be unusually unpredictable and

13 dangerous).  Additionally, the record contains some support for a determination that the offense

14 was carried out in a dispassionate and calculated manner to the extent that petitioner retrieved a

15 knife from under the seat of his van and used it to stab his friend, with whom he was arguing,

16 repeatedly to his death.  *See* 15 Cal. Code Regs. §2402 (c)(1)(B).

17         In order for these circumstances to support the denial of petitioner's parole, there

18 must be some indication that they remain probative to the statutory determination of his current

19 or future dangerousness.  *See Cooke*, 606 F.3d at 1216 (quoting *In re Lawrence*, 44 Cal. 4th 3d at

20 1214).  The California Supreme Court has explained "it is not the circumstance that the crime is

21 particularly egregious that makes a prisoner unsuitable for parole- it is the implication concerning

22 future dangerousness that derives from the prisoner having committed that crime."  *In re*

23 *Lawrence*, 44 Cal.4th at 1207.  In other words, California law authorizes the Board to consider

24 the circumstances of the commitment offense, but only insofar as those circumstances relate to

25 the inmate's current dangerousness.  *In re Lawrence*, 44 Cal.4th at 1214.

26 /////

1    Importantly, in this case, the Board did not rely exclusively on circumstances

2 related to petitioner's commitment offense to support the denial of parole.  The Board

3 additionally appeared to rely on (1) petitioner's criminal history; (2) a finding that he has an

4 unstable social history; (3) his history of substance abuse; (4) insufficient participation in self-

5 help therapy; (5) misconduct during incarceration; and (6) a finding that his gains were recent

6 and needed to be sustained over a longer period of time.

7    Petitioner's social history and record of violence were properly considered by the

8 panel (*see* 15 Cal. Code Regs. §2402(c)(2)-(3)), as was his history of substance abuse.  Like the

9 circumstances of petitioner's commitment offense, these are immutable factors that he is forever

10 unable to change.  Such immutable factors are relevant considerations to the extent they remain

11 probative to a determination of petitioner's current or future dangerousness.  This is not a case in

12 which continued reliance solely on unchanging  factors has risen to the level of a due process

13 violation.  *See generally Biggs*, 334 F.3d at 916 (cautioning that "[o]ver time... should [a

14 prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying

15 him a parole date simply because of the nature of [his] offense and prior conduct would raise

16 serious questions involving his liberty interest in parole") (overruled on other grounds in

17 *Hayward*, 603 F.3d at 555, 563).  Various other factors relied upon by the Board demonstrated

18 that there was a sufficient nexus between the unchanging circumstances relied upon and the

19 Board's conclusion that petitioner still posed a risk of danger.  These other factors also

20 independently constitute some evidence to support the Board's unfavorable conclusion.

21    The Board considered and relied on petitioner's institutional behavior.  *See* 15

22 Cal. Code Regs. §§ 2402(c)(6) (serious misconduct in prison tends to show unsuitability f or

23 parole while participation institutional activities tend to show suitability for parole).  Petitioner's

24 record indeed reflects some serious misconduct in prison, as he has received a total of five CDC

25 115 disciplinary reports during incarceration.  "[A] CDC 115 documents misconduct believed to

26 be a violation of law which is not minor in nature." *In re Gray*, 151 Cal.App.4th 379, 389 (2nd

1   Dist. 2007).  In 1999, petitioner was disciplined for mutual combat.  The prior year, he was

2   disciplined for behavior endangering the institution.  More recently, in 2001, petitioner was

3   disciplined for smoking and a cell fight.  He has also received a few 128s, which document less

4   serious incidents or minor misconduct.  *See Id*.  Most recently, petitioner received a 128 for being

5   out of bounds in October 2002 and another for conduct the Board described as "copping an

6   attitude" in June 2006.

7           There are no recent 115s or 128s in petitioner's record reflecting violence.

8   Nevertheless, behavior such as disobeying rules and "copping an attitude" still poses a risk of

9   threat to institutional safety and security.  In addition, some of petitioner's misconduct was still

10  near in time to the 2006 parole suitability determination.  Thus, the evidence regarding

11  petitioner's misconduct in prison is not such that a reviewing court could conclude that it did not

12  hold *any* probative value at that time.

13          The Board also cited petitioner's lack of significant participation in self-help

14  programming.  Evidence in the record showed that petitioner participated in an anger

15  management program in 1998, the Lifer Support Group in the late 1990s through 2000, and

16  Breaking Barriers in 2002.  At some point in the past petitioner had been involved in Stress

17  Management, Cage Your Rage, and Straight Life.  With respect to substance abuse programming,

18  petitioner participated in AA in 1997 and 1998 and NA in 2004 and 2005.  Petitioner reported to

19  the Board that there was a four year period of time when no substance abuse programs were

20  available to him.  Nevertheless, even assuming the truth of this statement, on this record it was

21  reasonable for the Board to conclude that his overall participation in self-help programming,

22  including substance abuse programming, was somewhat limited over his many years of

23  incarceration and that he needed to do additional work in this area before being released to

24  parole.  It was also reasonable for the Board to conclude that many of petitioner's gains, such as

25  remaining free of discipline, and resuming participation in substance abuse programming, were

26  somewhat recent and that he needed to be able to sustain these positive factors for more time

1  before being found suitable for parole.

2          Despite petitioner's argument to the contrary, the Board did expressly consider

3  many positive aspects of his conduct in prison including his extensive participation in vocations,

4  exceptional work reports, favorable mental health reports and a psychological evaluation that was

5  supportive of release, among other evidence of rehabilitation.  Petitioner's allegation that the

6  Board cited for the appearance of considering, but did not *actually* consider these factors, is

7  speculative and without merit.  *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory

8  allegations which are not supported by a statement of specific facts do not warrant habeas

9  relief.").  Moreover, to the extent petitioner simply disagrees with the manner in which the Board

10  weighed the evidence, or contends that the Board assigned insufficient weight to the positive

11  factors, no relief is available because this court is precluded from re-weighing the evidence.

12          In sum, the record contains with respect to an assessment of petitioner's current

13  dangerousness many positive factors, but also contains some negative factors that tend to show

14  he is not suitable for parole.  Due process requires only that the Board's decision be supported by

15  some evidence in the record.  The circumstances of petitioner's commitment offense, combined

16  with the other negative factors set forth above, suffice to support the Board's November 16, 2006

17  decision that petitioner was not yet suitable to be released on parole.  Accordingly, petitioner is

18  not entitled to relief for any of his claims regarding the Board's denial of parole.

19                                        VI.  CONCLUSION

20          For the foregoing reasons, IT IS HEREBY RECOMMENDED that the application

21  for writ of habeas corpus be DENIED.

22          These findings and recommendations are submitted to the United States District

23  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-

24  one days after being served with these findings and recommendations, any party may file written

25  objections with the court and serve a copy on all parties.  Such a document should be captioned

26  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

shall be served and filed within seven days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 29, 2010

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE

14